IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA HOSKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-683-MAB |
| | ) |
| MICHAEL BARTOLOTTI, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is before the Court sua sponte for case management purposes. Plaintiff is proceeding *in forma pauperis* in this lawsuit (Doc. 10). *In forma pauperis* proceedings are governed by 28 U.S.C. § 1915. *See also id.* at § 1915A(b)(1). Subsection (e)(2) of § 1915 requires the dismissal of claims that are "frivolous." 28 U.S.C. § 1915(e)(2). This statute "[a]ccords judges . . . the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless," such as those that are "'fanciful,' 'fantastic,' 'delusional,' 'irrational,' or 'wholly incredible.'" *Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)). *See also Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002) (explaining that a suit should be dismissed when the factual allegations are incredible without the need for an evidentiary hearing to determine the truth or falsity of the allegations).

Here, the main thrust of Plaintiff's complaint is that the 16 named Defendants and

dozens of other staff (who are all non-Defendants) at Pinckneyville Correctional Center conspired to obstruct him from receiving his psychiatric medications between December 31, 2020 and April 18, 2021, or stood idly by (Doc. 1; *see also* Doc. 19). Plaintiff alleged that he suffered from psychosis and been diagnosed with "Bipolar" and Schizophrenia (Doc. 1, p. 64). He further alleged that he experienced "hallucinations, hearing voices, elevated mood, paranoia, thoughts of harming myself [and] others" (*Id.* at p. 63). According to Plaintiff, all of the Defendants knew that he had a serious mental illness and that he had been reporting staff misconduct to the psychiatrist (*Id.*). They wanted the complaints to stop and knew "the only way" to stop him was "if they told me that I better . . . [tell] the telepsychiatrist that I had no serious illnesses nor homicidal ideations and didn't need my psychotropic medications to be renewed" (*Id.*). They told him that if he didn't "act normal" and say he "needed [his] psychotropic medications to remain discontinued," then officers would fabricate stories about him, issue false disciplinary tickets for serious infractions, and send him to segregation (*Id.*). He alleged that some Defendants intercepted and destroyed sick call slips that he submitted asking for his medications to be renewed (*Id.*). They made sure "most" of his grievances were not processed to keep other staff from getting in trouble and to prevent him from getting his medications (*Id.* at pp. 63, 65). They made him sign treatment refusal forms to prevent him from getting his medications (*Id.* at p. 64). He further alleged Defendants reviewed his mental health records and had others eavesdrop on his conversations with mental health staff to make sure he was not requesting his medications or reporting his symptoms (*Id.* at p. 64). They threatened that if they found out he did, they would beat him, and they promised that

other staff would cover up all evidence of the beating (*Id.* at pp. 64, 65)

According to Plaintiff, there were multiple reasons Defendants and other staff were not allowing him to get his medications renewed, including to retaliate against him for his "extensive grievance and litigation history against their facility staff," to sabotage his existing lawsuits and any future lawsuits he might file, to keep him from reporting their misconduct, to keep themselves and their friends out of trouble, and because they wanted "to see me affected mentally and physically" (Doc. 1, pp. 63, 64, 65).

The Court was skeptical of Plaintiff's claims from the outset. However, Plaintiff was allowed to proceed past the screening stage because the Court thought there might be a chance, however slim, that Plaintiff's contentions could have some merit (*see* Doc. 19). As the Supreme Court said:

> An *in forma pauperis* complaint may not be dismissed . . . simply because the court finds the plaintiff's allegations unlikely. Some improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-old insight that many allegations might be "strange, but true; for truth is always strange, Stranger than fiction."

*Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (quoting Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan & W. Pratt eds. 1977)).

The Court also noted in the threshold order that this case was strikingly similar to a previous case: *Hoskins v. Swisher*, 20-cv-395-MAB (S.D. Ill 2020), which was also handled by the undersigned (Doc. 19, p. 7 n.2). In the previous case, Plaintiff alleged that during an earlier time period—from his arrival at Pinckneyville in June 2019 to April 2020—over two dozen correctional officers and medical providers at Pinckneyville conspired to deny

him access to his psychiatric medications. *See* SDIL Case No. 20-cv-395-MAB, Docs. 16, 115, 210. The case proceeded through discovery to summary judgment. However, after reviewing the evidence submitted with the defendants' motions for summary judgment, the Court concluded that Plaintiff's story was so utterly implausible on its face that no rational jury could ever believe it or return a verdict in his favor. SDIL Case No. 20-cv-395-MAB, Doc. 210, p. 14.

The Court explained that it strained credulity to think that nearly the entire staff at Pinckneyville either participated in or turned a blind eye to a scheme aimed at forcing a seriously mentally ill inmate to *not* take his psychiatric medications. *See id.* at pp. 15, 16. The story simply did not make sense on its face. *Id.* Why would any correctional officer or mental health personnel want a seriously mentally ill inmate to go unmedicated? *Id.* Plaintiff's story ran contrary to the IDOC employees' own interests and would only make their jobs more difficult and dangerous. *Id.* Also, the scope of the purported conspiracy—officials of every role and rank, in every cell house at the facility, working every day for months to deprive Plaintiff of his medications—made the story implausible. *Id.* Furthermore, the only evidence supporting Plaintiff's claims was his own testimony, and medical records showed that during the relevant time period, Plaintiff's judgment, thinking, and ability to function were impaired by mental illness, sometimes to a devastating degree. *Id.* at p. 17. In particular, the evidence showed that Plaintiff had been diagnosed with very serious psychological problems, including bipolar disorder with psychosis and severe Schizoaffective Disorder—Bipolar Type. *Id.* at pp. 3–10, 17. Mental health providers repeatedly noted that Plaintiff presented as guarded/paranoid, anxious,

manic, and angry and that Plaintiff reported hearing voices and visual hallucinations. *Id.* Mental health providers indicated that Plaintiff said he was afraid that staff was out to get him or trying to hurt him. *Id.* In fact, one provider said that Plaintiff harbored "significant persecutory delusions" that he was being targeted by staff at the facility. *Id.* Plaintiff's condition eventually deteriorated to the point that he was transferred in April 2021 to a special psychiatric correctional facility at Dixon Correctional Center. *Id.*

Plaintiff testified that he did not have his medications for the entire time that he was at Pinckneyville. SDIL Case No. 20-cv-395-MAB, Doc. 210, p. 10. He remained unmedicated after his transfer to Dixon. *Id.* At the time of his deposition in June 2022, he was still unmedicated and admitted that he was still experiencing symptoms, including "confused thoughts" and "delusions." *Id.* at pp. 17–18 (citing Doc. 189-1, p. 72). The Court concluded that "[g]iven the implausibility of Plaintiff's claims, and the quality of the evidence in support of those claims . . . no reasonable jury could find in favor of Plaintiff (no matter how sincerely Plaintiff believes his own story)." *Id.* at p. 18. Summary judgment was therefore granted to all Defendants. *Id.* at p. 18.

Having seen all of the evidence in the previous case, and taking into consideration the identity and close timeframes between the claims in that case and those asserted in the instant case, the Court is convinced that Plaintiff's claims in the instant case are factually frivolous. Plaintiff's story of a years-long, all-encompassing conspiracy within Pinckneyville Correctional Center, involving nearly the entire staff at Pinckneyville either actively "out to get" him to keep him from taking his psychiatric medications or willing to turn a blind eye, is simply not believable. While the Court has no reason to doubt the

sincerity of Plaintiff's belief in his own story, it is clearly the product of mental illness and paranoid, delusional thinking. For that reason, the Court cannot justify allowing this litigation to continue any further and to consume any further public resources of the Court or the office of the Illinois Attorney General.

Accordingly, this case is **DISMISSED** as factually frivolous pursuant to 28 U.S.C. § 1915(e)(2). The dismissal is with prejudice and Plaintiff is assessed a strike pursuant to § 1915(g).

**IT IS SO ORDERED.**

**DATED: March 7, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**

## NOTICE

Plaintiff is advised that this is a final decision ending his case in this Court. If Plaintiff wishes to contest this decision, he has two options: he can ask the undersigned to reconsider the Order or he can appeal to the Seventh Circuit.

If Plaintiff chooses to appeal to the Seventh Circuit, his notice of appeal must be filed in the district court *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 425 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). Once a notice of appeal is filed, Plaintiff will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another

"strike" under 28 U.S.C. § 1915(g).

On the other hand, if Plaintiff wants to start with the undersigned, he can file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), but such a motion is not required to preserve his appellate rights. Any Rule 59(e) motion *must* be filed within twenty-eight (28) days of the entry of judgment. FED. R. CIV. P. 59(e), and the deadline *cannot* be extended. *See* FED. R. CIV. P. 6(b)(2). Any motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010) ("This court has held that otherwise timely skeletal motions that fail to satisfy the requirements of FED. R. CIV. P. 7(b)(1) do not postpone the 30–day period for filing a notice of appeal . . . .").

So long as the Rule 59(e) motion is in proper form and filed no later than 28 days after the judgment is entered, the 30-day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the motion is ruled on. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal, and the clock will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor,* 556 F.2d 818, 819–20 (7th Cir. 1977). Again, the deadline for filing a notice of appeal can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.